## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HORACE TOWNSEND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 13 C 1881 |
| v. | ) |
| ALEXIAN BROTHERS MEDICAL | ) |
| CENTER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On July 9, 2013, pro se Plaintiff Horace Townsend filed a First Amended Complaint against Defendants Alexian Brothers Medical Center ("ABMC") and Anne Marie Herlehy for failing to promote him to the position of Surgical Technologist and for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court denies Plaintiff's summary judgment motion [51] and grants Defendants' summary judgment motion [54]. The Court denies Defendants' motion to strike [60] and Plaintiff's motion to strike [69] as moot because the Court considered the parties' challenges to the facts and evidence within the context of Northern District of Illinois Local Rule 56.1, as discussed in detail below.[1] The Court dismisses this

---

[1] Construing pro se Plaintiff's additional filings at docket numbers 71 and 72 liberally, the Court considers these documents as supplemental memoranda in response to Defendants' motion for summary judgment because Plaintiff addresses Defendants' arguments and assertions made in support of their summary judgment motion. *See Ambrose v. Roeckeman,* 749 F.3d 615, 618 (7th Cir. 2014) ("pro se petitions are to be construed liberally, and should be held to standards less stringent than formal pleadings drafted by attorneys").

lawsuit in its entirety.

## BACKGROUND

**I.      Northern District of Illinois Local Rule 56.1**

Because Townsend is a pro se litigant, Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2.  The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted).  Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009).  "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)).  Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

Although courts must construe pro se pleadings liberally, *see Ambrose v. Roeckeman,* 749 F.3d 615, 618 (7th Cir. 2014), a plaintiff's pro se status does not absolve him from

2

complying with the federal and local procedural rules. *See Pearle Vision, Inc. v. Romm,* 541 F.3d 751, 758 (7th Cir. 2008); *Greer v. Board of Ed. of City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001). As the Supreme Court instructs, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

Here, Townsend did not file a Local Rule 56.1(a)(3) Statement of Facts in support of his summary judgment motion nor a Rule 56.1(b)(3)(C) Statement of Additional Facts responding to Defendants' summary judgment motion. Further, Townsend did not respond to Defendants' Rule 56.1(a)(3) Statement of Facts. Instead, Townsend attaches numerous documents to his filings and makes arguments in his legal memoranda about the facts and evidence. Under the circumstances, the Court adopts Defendants' unopposed material facts set forth in their Rule 56.1 Statement of Facts as true to the extent that they are supported by the record. *See Apex Digital, Inc. v. Sears, Roebuck & Co.,* 735 F.3d 962, 965 (7th Cir. 2013); *see also Keeton v. Morningstar, Inc.,* 667 F.3d 877, 883-84 (7th Cir. 2012) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). In short, the Court is not required to scour the record looking for factual disputes nor is the Court required to piece together Townsend's arguments for him. *See Diadenko v. Folino*, 741 F.3d 751, 757 (7th Cir. 2013).

## II. Relevant Facts

### A. The Parties

ABMC is a not-for-profit, religious-based acute care hospital located in Elk Grove Village, Illinois. (R. 56, Defs.' Rule 56.1 Stmt. Facts ¶ 1.) Herlehy is presently ABMC's

Administrative Director for Perioperative, Endoscopy, and Ambulatory Services. (*Id.* ¶ 2.) From December 2009 to April 2012, Herlehy held the position of Administrative Director for the Perioperative and Cardiovascular Services Department. (*Id.*) Among Herlehy's responsibilities in both her current and prior roles was and is overseeing all operating room Surgical Technologists. (*Id.* ¶ 3.)

On January 4, 2011, ABMC hired Townsend, an African-American male, as a resource Patient Transporter. (*Id.* ¶ 4.) As a resource employee, Townsend worked on an "as needed" basis, and thus did not work set hours. (*Id.*) Not long after ABMC hired Townsend, he moved into a regular part-time and then a full-time position. (*Id.* ¶ 11.) At the time ABMC hired Townsend, he had graduated from high school and had completed a Surgical Technologist diploma program at Everest College in Merrillville, Indiana. (*Id.* ¶ 5.) Prior to receiving his Everest College diploma, Townsend had completed a clinical rotation alternating between Trinity Advocate Hospital and St. Margaret Hospital as a Surgical Technologist from December 2009 to May 2010. (*Id.* ¶ 6.)

### B. Open Positions for Surgical Technologists

Surgical Technologists assist in ABMC's operating rooms by ensuring cleanliness of the rooms and availability of required instruments, stocking the operating rooms with supplies and equipment, and assisting in the preparation of surgical equipment for surgeries. (*Id.* ¶ 15.) Also, Surgical Technologists scrub for surgeries as directed by the operating room registered nurse during which time the Surgical Technologist is responsible for handing appropriate surgical tools to the doctor during procedures. (*Id.* ¶ 16.) Accordingly, it is important for a Surgical Technologist to be familiar with the procedures that take place in the operating room. (*Id.* ¶ 17.)

4

In April 2011, Operating Room Director Suzanne McKenna directly supervised the Surgical Technologists, although McKenna left her employment with ABMC in late August 2011. (*Id.* ¶ 18, 19.) On May 4, 2011, Townsend applied for two open Surgical Technologist positions. (*Id.* ¶ 20.) The first position for which Townsend applied was on the day shift and required applicants to have a high school diploma, a Cardiopulmonary Resuscitation ("CPR") certification, and a one-year Surgical Technologist course. (*Id.* ¶¶ 21, 22.) Also, ABMC preferred that the candidate have a certification as a Surgical Technologist. (*Id.* ¶ 23.) The second position for which Townsend applied was a rotating position on the evening shift that also required applicants to have a high school diploma, CPR certification, and a one-year Surgical Technologist course. (*Id.* ¶ 24.) Also, the evening shift position required applicants to have one-year Surgical Technologist hospital experience and preferred certification as a Surgical Technologist. (*Id.* ¶ 25.) Although Townsend has a high school diploma, has completed a one-year Surgical Technologist course, and is CPR certified, he was not certified by Illinois or any state as a Surgical Technologist nor did he have one year of experience as a Surgical Technologist. (*Id.* ¶¶ 26-28.)

Pursuant to ABMC's Interdepartmental Transfer Policy ("Policy"), ABMC will not consider transfer requests during an employee's first year of employment. (*Id.* ¶ 29.) ABMC assigned Recruiter Dana Zenios ("Zenios") to post and fill the May 2011 Surgical Technologist positions. (*Id.* ¶ 32.) Zenios received Townsend's application for the two Surgical Technologist positions in May 2011, but pulled his applications from consideration because he had not worked for ABMC for one year pursuant to the Policy. (*Id.* ¶ 33.) Zenios had no authority to override this Policy. (*Id.* ¶ 34.)

5

McKenna and Operating Room Educator Raia Glavtcheff ("Glavtcheff") interviewed candidates for the two May 2011 positions and recommended to Herlehy candidates for hire, after which Herlehy made the final hiring decisions. (*Id*. ¶¶ 35, 36.) ABMC did not hire Townsend for either position, and the Surgical Technologist positions ultimately remained open. (*Id*. ¶¶ 37-39.) At some point in July 2011, Townsend went to see McKenna about the Surgical Technologist positions. (*Id*. ¶ 40.) McKenna told him that he needed experience and a certification to become a Surgical Technologist. (*Id*.) On August 11, 2011, Townsend telephoned Perioperative Business and Central Sterile Director Gregory Benjamin ("Benjamin") and asked to speak with him about the Surgical Technologist positions. (*Id*. ¶ 41.) Benjamin was in Herlehy's office at the time of the call and asked Townsend to stop by. (*Id*. ¶ 42.) Townsend then asked Herlehy and Benjamin about the posted Surgical Technologist position and Herlehy told him that she would get back to him, assuming that Townsend was asking about the evening Surgical Technologist position. (*Id*. ¶ 43.) Although Herlehy was not familiar with Townsend's application status, she knew that — based on Townsend's representations regarding his skills and experience — he was not qualified for the position and lacked the one-year experience required for the evening position. (*Id*. ¶ 44.) Following her conversation with Townsend, Herlehy followed up with McKenna on August 14, 2011 and McKenna reported that she had told Townsend that he needed experience and a certification. (*Id*. ¶ 45.)

Townsend followed-up with Herlehy via email on August 22, 2011 and Herlehy responded three days later advising him that ABMC needed experienced staff for the rotating evening shifts and that she did not believe he was well-suited for the position given his skills and experience. (*Id*. ¶ 46.) At that time, Herlehy was unaware that Zenios has pulled Townsend's

6

application due to his length of service. (*Id*. ¶ 47.) Thereafter, ABMC suspended filling the Surgical Technologist positions pending final budget determinations. (*Id.* ¶ 48.)

On September 12, 2011, Townsend filed a Charge of Discrimination ("Charge") with the Illinois Department of Human Rights ("IDHR"), which he cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (*Id*. ¶ 49.) In his Charge, Townsend alleged that ABMC had failed to promote him to either of the May 2011 Surgical Technologist positions because of his race, African-American, and gender, male. (*Id.*)

Thereafter, on October 24, 2011, ABMC re-opened the day shift Surgical Technologist position. (*Id*. ¶ 50.) ABMC ultimately selected Caroline Woodward ("Woodward"), who had completed her clinical rotation at ABMC and received Clinical Rotation Performance Ratings of above average to excellent. (*Id.* ¶ 51.) Also, Woodward received her Surgical Technologist diploma in December 2011 and immediately sat for, and passed, the certification examination. (*Id*.) ABMC eliminated the rotating evening full-time Surgical Technologist position without ever filling the position. (*Id.* ¶ 52.)

In January 2012, ABMC opened two part-time Surgical Technologist positions both for which Townsend applied on January 3, 2012. (*Id*. ¶ 53.) Glavtcheff, the Interim Operating Room Director, two Registered Nurses, and a Surgical Technologist interviewed Townsend for the open positions. (*Id*. ¶ 54.) When asked during the interview to describe any operating room procedure with which he was familiar, Townsend stated that he knew the A-V fistula procedure, but then could not explain it. (*Id*. ¶ 55.) Glavtcheff and the Interim Operating Room Director concluded that Townsend was unqualified for the Surgical Technologist position. (*Id*. ¶ 56.) ABMC offered the part-time day shift position to an African-American male, who initially

7

accepted, but later reneged on the offer for a higher paying job at another hospital. (*Id*. ¶ 58.) ABMC then reclassified the day shift position to an RN, Clinician I and cancelled the part-time, evening position. (*Id*. ¶ 59.)

On February 7, 2013, Townsend applied for a resource position as a Certified Surgical Technologist — a position ABMC later cancelled without filling. (*Id.* ¶ 60.) Also on February 7, 2013, Townsend applied for a part-time Surgical Technologist position on the day shift that ABMC later reclassified as a record specialist. (*Id*. ¶ 61.) On September 23, 2013, Townsend applied for a Certified Surgical Technologist position on the evening shift. (*Id*. ¶ 62.) ABMC selected Joan Gabel ("Gabel"), a certified Surgical Technologist with recent experience from Aesthetic Plastic Surgery Center, for the September 2013 position. (*Id*. ¶ 63.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

8

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also Celotex,* 477 U.S. at 322 ("plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## ANALYSIS

### I.  Title VII and § 1981 Discrimination Claims

Townsend brings his race and reverse gender discrimination claims against ABMC under Title VII and his race discrimination claim against Herlehy under 42 U.S.C. § 1981 — claims that the Court reviews under the same standard at summary judgment. *See Smiley v. Columbia Coll. Chicago,* 714 F.3d 998, 1002 (7th Cir. 2013).[2] To establish that race or reverse gender discrimination occurred, Townsend may proceed under either the direct or indirect methods of proof. *See Vaughn v. Vilsack,* 715 F.3d 1001, 1006 (7th Cir. 2013). Townsend attempts to establish his intentional discrimination claims under the indirect, burden-shifting method.

To survive summary judgment under the indirect method, Townsend must first make out a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which, in the context of a failure to promote claim, includes four elements: "(1) he belonged to a protected class; (2) he applied and was qualified for the position sought; (3) he was rejected for that position; and (4) the employer awarded the

---

[2] Section 1981—unlike Title VII—permits lawsuits against individual agents of an employer, and thus Townsend's claim against Herlehy is pursuant to 42 U.S.C. § 1981. *See Johnson v. General Bd. of Pension & Health Benefits of United Methodist Church,* 733 F.3d 722, 727 (7th Cir. 2013). Gender discrimination claims, however, are not actionable under 42 U.S.C. § 1981. *See Runyon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

9

promotion to someone outside the protected class who was not better qualified." *Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014). As to the first prong of his reverse gender discrimination claim, Townsend must present "background circumstances" showing that ABMC discriminates against men. *See Farr v. St. Francis Hosp. & Health Ctrs.,* 570 F.3d 829, 833 (7th Cir. 2009). If Townsend establishes a prima facie case of intentional discrimination, then the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for their failure to promote him to the position of Surgical Technologist. *See Adams,* 742 F.3d at 735; *see also Harper v. Fulton County, Ill.*, 748 F.3d 761, 767 (7th Cir. 2014). If Defendants meet this burden, the burden shifts back to Townsend to present evidence that Defendants' reason is pretext for discrimination. *See Harper,* 748 F.3d at 767; *Adams,* 742 F.3d at 735. "The focus of the pretext inquiry is whether the proffered reason is a lie." *Smiley v. Columbia Coll. Chicago*, 714 F.3d 998, 1002-03 (7th Cir. 2013).

Here, Defendants argue that Townsend cannot demonstrate that he was qualified for the May 2011 positions under the second element of his prima facie case. The Court agrees. It is undisputed that Townsend was not qualified for the May 2011 open Surgical Technologist positions because he had been working at ABMC for only four months at the time he applied, and, under ABMC's Interdepartmental Transfer Policy, ABMC would not consider transfer requests during an employee's first year of employment. Accordingly, Recruiter Zenios pulled Townsend's May 2011 applications based on this Policy and had no authority to do otherwise.

Moreover, ABMC eventually cancelled the evening full-time Surgical Technologist position and promoted Woodward for the day position. At the time ABMC promoted Woodward, it is undisputed that she had completed her clinical rotation at ABMC and received

Clinical Rotation Performance Ratings of above average to excellent. Not only did Woodward have a Surgical Technologist diploma, but she also had a Surgical Technologist certificate. As such, Townsend cannot establish the fourth prima facie element under his failure to promote claim, namely, that ABMC promoted someone who was not better qualified than he was because he did not have a Surgical Technologist certificate like Woodward. *See Adams,* 742 F.3d at 735.

In addition, undisputed evidence in the record reveals that ABMC's supervisory staff concluded that Townsend was unqualified for the two part-time Surgical Technologist positions in January 2012 after interviewing him for these open positions, especially because he was not familiar with the surgical procedures necessary to do the job. Also, ABMC offered the part-time day shift position to an African-American male, who initially accepted, but later reneged on the offer for a higher paying job at another hospital. Thereafter, ABMC reclassified the day position to an RN, Clinician I and cancelled the part-time, evening position. As for the September 2013 Surgical Technologist position, ABMC hired Gabel, who, unlike Townsend, was a certified Surgical Technologist with recent experience, and therefore, Townsend cannot establish the fourth prima facie element regarding the September 2013 open position. *See Adams*, 742 F.3d at 735.

Accordingly, Townsend has not established that he was qualified for the open Surgical Technologist positions or that ABMC promoted someone outside of his protected class who was not better qualified than he is. *See id*. Viewing the facts and all reasonable inferences in Townsend's favor, he has not established a prima facie case of race or reverse gender discrimination under the circumstances.

Even if Townsend had establish a prima facie case of intentional discrimination, ABMC has offered a legitimate, nondiscriminatory reason for not promoting Townsend for the May 2011 open positions, namely, that any such promotion would violate its established transfer policy. Further, ABMC's decision not to promote Townsend following his January 2012 interview was based on Glavtcheff's and the Interim Operating Room Director's conclusion that Townsend was not qualified for the position.[3]

In addition, Townsend has not established that ABMC's reasons for not promoting him are pretext for discrimination. *See Majors v. General Elec. Co.*, 714 F.3d 527, 539 (7th Cir. 2013) ("An employer's proffered nondiscriminatory reason for the adverse employment action is pretextual if it was a lie."). "An inquiry into pretext requires that we evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Hill v. Tangherlini,* 724 F.3d 965, 968 (7th Cir. 2013). Put differently, the "question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain "[the adverse employment action.]" *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) (citation omitted).

Townsend argues that Defendants' vague, shifting, and conflicting explanations for why they did not promote him show pretext for discrimination. To establish a material issue of fact as to pretext, Townsend must show either that: "(1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or (2) that an employer's explanation is not credible." *Mullin v. Temco Machinery, Inc.,* 732 F.3d 772, 778 (7th Cir.

---

[3] Under the circumstances, the Court's analysis of ABMC's legitimate job expectations merges with the pretext analysis. *See Smiley v. Columbia Coll. Chicago*, 714 F.3d 998, 1002 (7th Cir. 2013).

2013). Townsend has failed to make any such showing. Rather, he argues that Defendants' explanations for the May 2011 positions shifted — first Defendants stated that he did not have sufficient experience and the preferred certification, next they relied on the Interdepartmental Transfer Policy. Defendants, however, relied upon Townsend's inexperience, the certification, and their transfer policy in not promoting Townsend for the May 2011 openings, and it is permissible for employers to have more than one reason for an employment decision. *See Garofalo v. Village of Hazel Crest,* \_\_\_ F.3d \_\_\_, 2014 WL 2609895, at \*10 (7th Cir. June 12, 2014) (plaintiff must "raise an issue of fact regarding each of the reasons proffered") (citation omitted). In sum, these reasons are not mutually exclusive of each other, and thus do not constitute a "shifting" explanation.

Also, Townsend takes issue with McKenna's comment that he needed a Surgical Technologist certificate, which was not required, but only preferred. McKenna's mistake in stating that a Surgical Technologist certificate was required for the May 2011 positions does not constitute pretext. *See Mullin v. Temco Mach., Inc.,* 732 F.3d 772, 778 (7th Cir. 2013) ("a mere mistake by an employer does not constitute pretext."). Also, Defendants relied on their belief that Townsend was not qualified for the later postings, a belief that Townsend has not refuted. *See Garofalo,* 2014 WL 2609895, at \*10; *Coleman*, 667 F.3d at 852.

On a final note, although Townsend testified at his deposition about statistical evidence regarding ABMC's work force, this evidence does not take into account who applied for and who was qualified for the Surgical Technologist positions, and thus this evidence does not support an inference of discrimination. *See Hnin v. TOA (USA), LLC,* 751 F.3d 499, 508 (7th Cir. 2014); *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616-17 (7th Cir. 2000).

Viewing the evidence and all reasonable inferences in Townsend's favor, as the Court is required to do at this procedural posture, he has failed to raise a genuine issue of material fact to survive summary judgment regarding his Title VII and § 1981 discrimination claims against ABMC and Herlehy.

## II. Retaliation Claim

In his First Amended Complaint, Townsend also brings a retaliation claim under both § 1981 and Title VII. The "substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under § 1981." *Smith v. Bray,* 681 F.3d 888, 896 (7th Cir. 2012). A plaintiff may prove retaliation under either the direct or indirect methods of proof. *See Alexander v. Casino Queen, Inc.,* 739 F.3d 972, 983 (7th Cir. 2014); *Majors,* 714 F.3d at 537. Townsend maintains that he can establish a prima facie case of retaliation under the indirect method of proof "which mirrors that for discrimination." *See Alexander,* 739 F.3d at 983 (citation and quotations omitted). Under the indirect method, Townsend must present evidence to establish a prima facie case of retaliation as follows: (1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse action; and (4) his employer treated him less favorably than similarly situated employees who did not engage in protected activity. *See id.*; *Majors*, 714 F.3d at 537. Once "a plaintiff claiming retaliation produces evidence that could establish all four elements, the burden shifts to the defendant to offer a nondiscriminatory reason for the adverse action." *Vaughn,* 715 F.3d at 1006. "If the defendant identifies an appropriate reason, the burden shifts back to the plaintiff to supply proof that the proffered reason is pretextual." *Id.*

First, Townsend bases his retaliation claim on ABMC's failure to promote him to the Surgical Technologist positions. Because the parties do not dispute that Townsend engaged in a statutorily protected activity by filing his EEOC/IDHR Charge in September 2011, Townsend has satisfied the first prong of his prima facie retaliation case. Nonetheless, as discussed in detail above, Townsend has failed to establish the second prong of his prima facie case of retaliation because undisputed evidence in the record shows that he was not qualified for the open Surgical Technologist positions. Also, ABMC provided evidence of its non-discriminatory reasons for not promoting Townsend and Townsend has failed to establish that these reasons were pretext for discrimination.

Townsend also argues that ABMC Patient Transport Manager Cedric Washington ("Washington") retaliated against him by threatening to write him up because Townsend took a pager home when he was not supposed to, along with the fact that a nurse had to transfer a patient when Townsend was overwhelmed by other work. (Defs.' Stmt. Facts ¶ 69.) Further, Townsend contends that Washington retaliated against him by changing his schedule to days, although when Townsend complained, Washington changed Townsend's schedule back. (*Id.* ¶ 70.) Townsend also criticizes Washington for not giving him time off when his father passed away in December 2011. (*Id.* ¶ 71.)

There is absolutely no evidence in the record, however, that Washington knew of Townsend's protected activity, namely, his September 2011 EEOC/IDHR Charge, at the time of Washington's alleged retaliatory conduct. *See Morfin v. City of East Chicago,* 349 F.3d 989, 1005 (7th Cir. 2003) ("The protected conduct 'cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity.'") (brackets omitted) (citation

15

omitted); *see, e.g., Hoppe v. Lewis Univ.,* 692 F.3d 833, 842 (7th Cir. 2012); *Stephens v. Erickson,* 569 F.3d 779, 788 (7th Cir. 2009). Thus, viewing the facts and inferences in Townsend's favor, Washington's alleged misconduct cannot serve as the basis for Townsend's retaliation claim.

Last, Townsend bases his retaliation claim on the fact that ABMC did not award him the Emergency Room Registrar positions for which he applied in June 2012. (*Id*. ¶¶ 66-68.) Townsend, however, fails to support this argument with any evidence that the individuals ABMC hired were similarly or less qualified than he is or that ABMC's reason for not promoting him was pretext for discrimination.

While the Court views all reasonable inferences in Townsend's favor, "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packaging Int'l Inc.,* 742 F.3d 802, 806 (7th Cir. 2014). Therefore, the Court grants Defendants' motion for summary judgment in regard to Townsend's retaliation claim.

## CONCLUSION

For these reasons, the Court denies Plaintiff's summary judgment motion [51] and grants Defendants' summary judgment motion [54] both brought pursuant to Federal Rule of Civil Procedure 56(a). The Court denies Defendants' motion to strike [60] and Plaintiff's motion to strike [69] as moot. The Court dismisses this lawsuit in its entirety.

**Dated:** July 7, 2014

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**